

FILED

Dec 11 2019, 9:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott H. Duerring
Duerring Law Offices
South Bend, Indiana

ATTORNEY FOR APPELLEE

Vincent M. Campiti
Nemeth, Feeney, Masters &
Campiti, P.C.
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

D.T.,

*Appellant-Respondent,*

v.

J.M.,

*Appellee-Petitioner*

December 11, 2019

Court of Appeals Case No.
19A-AD-1334

Appeal from the
St. Joseph Probate Court

The Honorable
Jason Cichowicz, Judge

Trial Court Cause No.
71J01-1711-AD-111

**Vaidik, Chief Judge.**

## Case Summary

[1]     D.T. ("Biological Father") appeals the trial court's order granting the adoption of his two children by J.M. ("Adoptive Father"). Specifically, Biological Father argues that the trial court failed to make any findings that would allow for his

consent to be dispensed with. We agree with Biological Father and therefore remand this case to the trial court.

# Facts and Procedural History

[2] L.M. ("Mother") and Biological Father have two children, J.A.T.-R. (born in August 2008) and J.A.T. (born in December 2009). Mother and Biological Father got married sometime in 2009. In late 2010 or early 2011, Mother and Biological Father separated. In April 2011, Biological Father was arrested and charged with Class A felony dealing in methamphetamine. He later pled guilty and was sentenced to forty years in the Indiana Department of Correction. *See* 20D03-1104-FA-7. Biological Father's current release date is November 12, 2029.

[3] After Biological Father was arrested, Mother filed a petition to dissolve her marriage to him. The divorce was final in June 2011. *See* 20D06-1104-DR-117, 20D06-1102-DR-64. According to the decree of dissolution of marriage, Mother was awarded sole legal and physical custody of the children with any visitation by Biological Father subject to her approval. Biological Father was not ordered to pay any child support while he was incarcerated. *See* Tr. p. 44.

[4] When Biological Father was first incarcerated, Mother brought the children to visit him. But after Mother met Adoptive Father, the visits stopped. Mother and the children moved in with Adoptive Father in 2013, and Mother and Adoptive Father got married in September 2014. Nevertheless, Biological

Father tried to stay in contact with the children. He sent them cards and letters and called Mother's phone, but Mother did not give the cards and letters to the children or answer his phone calls.

[5] In October 2017, Biological Father filed a petition for visitation with the children, which the trial court denied "based upon the representation that the child's therapist does not recommend contact with [Biological Father]." *See* 20D06-1102-DR-64.

[6] The next month, Adoptive Father filed a petition to adopt the children. The petition alleged that Biological Father's consent to the adoption is not required as follows:

> 10. The consent of [Biological Father] is not required because while the children were in the custody of another person, he, for a period of at least one year, failed without justifiable cause to communicate significantly with the children when able to do so or knowingly failed to provide for the care and support of the children when able to do so as required by law or judicial decree.

> 11. The consent of [Biological Father] is not required because [he] is presently incarcerated with the Indiana DOC following a methamphetamine manufacturing conviction. He is serving a sentence of more than twenty years. He has not had meaningful contact with these children for more than six years.

Appellant's App. Vol. II pp. 7-8. Biological Father objected to the adoption, and a hearing was held.

[7]     At the beginning of the hearing, the parties decided that they would present evidence on the issue of consent first. During her testimony, Mother admitted that Biological Father had tried to stay in contact with the children and that she had "interfered with his ability to communicate with the children" by not giving them his cards or letters or answering her phone. Tr. pp. 18-19. Mother also did not dispute that Father was not ordered to pay any child support while he was incarcerated. After hearing evidence on consent, the trial court said that it was taking the issue of consent under advisement and that it would have a ruling shortly. *Id.* at 46. When the court came back on the record, it ruled that Biological Father's "consent is required." *Id.* at 47. In making this ruling, the court explained, "I should tell the lawyers here that there is some recent caselaw that discusses the whole child support issue as well as Mother's attempts to thwart communication and so that's the reason and the basis." *Id.* Although finding that Biological Father's "consent is required," the court said that it was moving "into the second phase of the case," that is, "the phase of the actual petition" and "what is in the best interests of the children." *Id.* The court noted that this didn't "mean that I've made my decision about what's going to happen next, but I wanted you to be aware of why I'm doing what I'm doing." *Id.* After this second phase, the court issued an order granting Adoptive Father's petition to adopt the children. The order provides, in relevant part:

> [Biological Father's] consent to the adoption of his biological children by [Adoptive Father] was required.

\* \* \*

The primary concern for the court in all adoption proceedings remains the best interests of the child. . . .

\* \* \*

The adoption statute fails to provide guidance for which factors to consider when determining the best interests of a child in an adoption proceeding. Case law, however, has noted the strong similarities between the adoption statute and the termination of parental rights statute with regard to best interest.

The Court must consider the totality of the circumstances in a termination of parental rights cause. These cases provide some guidance as to what constitutes an "unfit" parent. Such a parent cannot give a child a suitable environment at the time of the termination hearing.

[Biological Father] cannot provide any type of environment for these children. He will not be in any position to provide such an environment for them until they are adults. His children require permanency and stability today, not ten (10) years from now.

\* \* \*

[Adoptive Father] has proven by clear and convincing evidence that the adoption by him of [the children] is in their best interest.

Appellant's App. Vol. II p. 85 (citations omitted).

[8] Biological Father now appeals.

# Discussion and Decision

[9] Biological Father contends that the trial court erred in granting Adoptive Father's petition to adopt the children. He argues that the court "completely skipped over any findings of fact, or conclusions of law that would allow for [his] consent to be dispense[d] with." Appellant's Br. p. 6. Accordingly, he asks us to "vacate" the court's order granting the adoption. *Id.* at 10.

[10] The granting of a petition for adoption is a multi-step process. Indiana Code section 31-19-11-1(a) lists the prerequisites to granting a petition, including that "the adoption requested is in the best interest of the child" and "proper consent, if consent is necessary, has been given." Ind. Code § 31-19-11-1(a). If the requirements listed in the statute are met, "the court shall grant the petition for adoption and enter an adoption decree." *Id.*

[11] Generally, the first step in the process is determining whether the biological parent's consent to the adoption is required. Indiana Code section 31-19-9-8 addresses when consent is not required and provides, in relevant part:

> (a) Consent to adoption, which may be required under Section 1 of this chapter, is not required from any of the following:
>
> * * *
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

(A) fails without justifiable cause to communicate significantly with the child when able to do so; or

(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

\* \* \*

(11) A parent if:

(A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and

(B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

[12] Here, the trial court specifically found that Section 31-19-9-8(a)(2) did not apply and that Biological Father's consent to the adoption was required. But if that were true—if Biological Father's consent was indeed required—then the adoption could not proceed. However, the court went on to discuss "what constitutes an 'unfit' parent" and granted the adoption. Presumably, the court was referencing Section 31-19-9-8(a)(11), which provides another path for dispensing with consent. But the court failed to make the specific findings required by that provision, namely, that (1) Biological Father is unfit to be a parent and (2) "the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent."

[13] In order to dispense with Biological Father's consent pursuant to Section 31-19-9-8(a)(11) and grant the adoption, the court was required to assess the best interests of the children at two stages: (1) a finding that Biological Father is unfit and that it is in the best interests of the children to dispense with Biological Father's consent pursuant to Section 31-19-9-8(a)(11) and (2) a finding that adoption by Adoptive Father is in the children's best interests pursuant to Section 31-19-11-1(a). The trial court's order appears to have conflated the first best-interests inquiry with the second. We therefore remand this case with instructions for the trial court to determine, first, whether Biological Father is unfit to be a parent and, if so, whether it is in the best interests of the children to dispense with his consent. Only if the court makes these first two determinations should it move on to the best-interests analysis required under Section 31-19-11-1(a).

[14] Reversed and remanded.

Najam, J., and Tavitas, J., concur.